35 So.2d 54
**WELLS v. MORRIS.**
4 Div. 42.

Court of Appeals of Alabama.
April 20, 1948.

498

J. C. Fleming, of Elba, for appellant.

Braxton B. Rowe, of Enterprise, for appellee.

HARWOOD, Judge.

Certiorari having been granted on petition of O. J. Wells, defendant below, appellant here, this proceeding is to review a decree of the Circuit Court of Coffee County awarding compensation to the plaintiff below, appellee here, for injuries sustained while an employee of the defendant below.

The proceedings below were instituted under the Alabama Workmen's Compensation Law, Chapter 5, Title 26, Code of Alabama 1940.

The finding of facts by the lower court is fully set forth in his decree, is not challenged by the appellant, and is as follows:

"It appears from the pleadings, evidence and admissions in this case that on March 11, 1947, the plaintiff, Haywood Morris, was an employee of the defendant, O. J. Wells, and on said date was employed as a log cutter, his duties being to cut down standing trees and saw them into proper lengths, was engaged in such employment with a fellow employee, Arthur Baxter; that the employer transported plaintiff and other employees each day from plaintiff's

home in Enterprise to a point between Elba and Brantley, more than twenty miles, where employer was engaged in cutting timber and sawing same into lumber; that plaintiff took his lunch with him each day, as did the other employees, which fact was known to the employer; that the employees were allowed thirty minutes each day for lunch, the lunch on the day in question was eaten by the plaintiff and others on the premises under the control of the defendant, but on which the timber had been cut and·which was about a half quarter from the place that the plaintiff and his saw partner had been working about 25 yards from the last log sawn by plaintiff and about a quarter of a mile from the mill; that the employer furnished a can of fuel oil to his employees to rub on the saws to prevent rust; that during the lunch period plaintiff built a small fire to make coffee to drink with his lunch, attempted to use the can or jug of fuel oil to make the fire burn in order to make his coffee, when the flame ran from the fire to the jug causing the explosion resulting in serious injuries to plaintiff; that the employees were accustomed to hang their lunches in the woods near where they were working each day, and at the noon hour, would get them and eat; that the employer had immediate actual notice of the injuries sustained by plaintiff; that defendant sent plaintiff on defendant's truck to Elba, after plaintiff informed him he wished to be sent to the hospital at Enterprise, that defendant gave the truck driver $5.00 to get a taxi cab to transport plaintiff from Elba to the hospital at Enterprise; that plaintiff sustained second and third degree burns of both legs and right hand; that plaintiff stayed in the hospital from March 11 to March 21, 1947, that he was examined again between August 15 and September 1 by said hospital clinic, where it was found that his burns had healed except for several small areas, which will require skin grafting for complete healing; that his hospital bill to the time of trial amounted to $145.40, and there will be additional charges for complete healing; that plaintiff has been totally disabled from the time of his injuries to the date of trial, had to be brought into the court room by others, not being able to walk, and this total disability will continue until his burns are completely healed; that plaintiff's wage was $6.00 per day, that he began work with defendant on April 9, 1946, working regularly, though not every day each week, from that time to November 22, 1946, with the exception of one week in September and one week in October, 1946, when he did no work at all; plaintiff did no work from November 15, 1946, until February 17, 1947, when he resumed his work for defendant, and worked regularly until he sustained his injuries on March 11; that plaintiff worked 34 weeks for a total wage of $802.75, and his average weekly wage $23.61.

"The Court finds that the plaintiff and defendant were at all times alleged in the complaint subject to the provisions of the Workmen's Compensation Law of Alabama; that the plaintiff was an employee of defendant on March 11, 1947, within the jurisdiction of this court, and received an injury as the result of an accident arising out of and in the course of his employment for defendant on that date, and as a result of the accident plaintiff is suffering a temporary total disability, and is entitled to compensation based upon the extent of such disability during such time as the disability continues; that said accident causing said injury to plaintiff was second and third degree burns on the legs and arm.

"The Court further finds from the evidence that the defendant had knowledge of the accident within 90 days from the date of the accident and that suit was filed for compensation within one year; that plaintiff was at all times mentioned in his complaint a married man and living with his wife, that his average weekly earnings for the purpose of computing compensation was $23.61; that his compensation is fixed at 60% of that amount, or $14.16."

The sole question presented on this review is whether the injury to the plaintiff employee was caused by an accident "arising out of and in the course of his employment," which conditions are necessary before recovery can be had under our Workmen's Compensation Law.

500

We will first consider whether the plaintiff's injuries were incurred in the course of his employment.

■ The phrase "in the course of" refers to the time, place, and circumstances under which the accident took place. An injury to an employee is in the course of his employment when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incident to it. Mobile Liners, Inc., v. McConnell, 220 Ala. 562, 126 So. 626; Southern Cotton Oil Co. v. Bruce, 249 Ala. 675, 32 So.2d 666.

Nourishment being essential to the continued efficiency of the employee in the performance of his work, the courts have been liberal in protecting the workers during the lunch hour, and have almost unanimously concluded that where the employee is eating his lunch on the employer's premises that such lunch period is considered in the course of employment. Horowitz on Workmen's Compensation, p. 156 and following; DeStafano v. Alpha Lunch Co., 308 Mass. 38, 30 N.E.2d 827, and cases therein cited.

■ The fact that the plaintiff employee in this case may have been negligent in the handling of the fuel oil can of course in no way affect his right of recovery.

■ Under the facts of this case, and the principles above set forth we are clear to the conclusion that the injury sustained by this plaintiff must be considered as having occurred in the course of his employment.

We now consider whether the plaintiff's injuries can be said to "arise out of" his employment.

■ The phrase "arises out of * * * employment" refers to employment as the cause and source of the injury. In other words, the phrase points to the origin of the accident. Irwin-Neisler and Co. v. Industrial Commission et al., 346 Ill. 89, 178 N.E. 357.

" 'The rational mind must be able to trace the resultant personal injury to a proximate cause set in motion by the employment, and not by some other agency.' Madden's Case, 222 Mass. 487, 495, 111 N. E. 379, 383 (L.R.A.1916D, 1000). In Hinchuk v. Swift & Co., 149 Minn. 1, 182 N.W. 622, it is said that the principle applicable to cases like that at bar is that the injury is included within the statute if there is some causal relation between the employment and the injury." Garrett v. Gadsden Cooperage Co., 209 Ala. 223, 96 So. 188, 190.

In his excellent and painstaking opinion in Southern Cotton Oil Co. v. Bruce, supra [249 Ala. 675, 32 So.2d 668], Justice Lawson summarizes the facts and principles of Ex parte Rosengrant, 213 Ala. 202, 104 So. 409, as follows, and we quote that part of his opinion because of its applicability to the question now being considered:

"In Ex parte Rosengrant, 213 Ala. 202, 104 So. 409, 412, the duties of the deceased employee were to grade and tally lumber as it was removed from Barges on the Mobile River into the planing mill of the employer, which mill was situated on the river bank. He was killed while engaged in such work. As to whether the accident occurred in the course of the employment this court said: 'It is clear from the evidence, and the court properly found, that he received the injury which caused his death in the course of his employment.' We also found that the accident arose out of his employment 'within the spirit, purpose, and meaning of this Workmen's Compensation Act.' In this connection it was said: 'His duties under his contract called him to this place, where tug boats loaded with lumber were waiting, and where schooners, tugs, and barges with crews were coming and going. This exposed him to hazards from loafing and working crews on these boats, to which he would not otherwise have been subjected. The Mobile river is a navigable stream, a public place in its nature for boats. It placed him in contact with the different crews of the different tug boats and schooners on this river at this place. It is evident from the evidence the decedent would not have been at that locality at the time the pistol was fired, accidentally, but for his employment by the defendant. His employment by the defendant contributed proximately

in causing his injury. By reason of his employment he was exposed to this hazard, which was a natural incident of his work at that place and which he would not probably have otherwise encountered. It is reasonably apparent from the entire evidence that the decedent would not have received this injury but for this contract of employment of him by defendant."

It matters not that the risk from the accident in question may have been external to the employment if the employment caused the exposure to the risk. Boris Const. Co. v. Haywood, 214 Ala. 162, 106 So. 799.

█ In this case the plaintiff, because of his remoteness in the woods at the lunch hour and the limited time of the lunch period, had no choice as a practical matter but to eat in the woods where he was working. Such a situation not only suggested but invited the heating of coffee to accompany the eating under such circumstances. His employment was therefore a contributing cause to the injury he sustained, and the injury was reasonably related to his employment.

In Dzikowska v. Superior Steel Co., 259 Pa. 578, 103 A. 351, 352 L.R.A.1918F, 888, the employee's death had resulted from burns he received when he temporarily left his work to smoke, and in striking a match his trousers and an oil soaked burlap apron he was wearing were thereby ignited. In holding that the employee's death was compensable the Supreme Court of Pennsylvania said:

"Acts of ministration by a servant to himself, such as quenching his thirst, relieving his hunger, protecting himself from excessive cold, performance of which while at work are reasonably necessary to his health and comfort, are incident to his employment and acts of service therein within the workmen's compensation acts, though they are only indirectly conducive to the purpose of employment."

In Whiting-Mead Commercial Company v. Industrial Accident Commission et al., 178 Cal. 505, 173 P. 1105, 1106, 5 A.L.R. 1518, the employee had sustained burns caused by the ignition of a turpentine soaked bandage on a wounded hand while he was lighting a match for the purpose of smoking a cigarette. In holding that such injury arose out of his employment the Supreme Court of California wrote:

"From these cases there is deducible a rule which is thus stated in one of them (Archibald v. Ott [77 W.Va. 448, 87 S.E. 791, L.R.A.1916D, 1013]): 'Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment. A man must breathe and occasionally drink water while at work. In these and other conceivable instances he ministers unto himself, but in a remote sense these acts contribute to the furtherance of his work. * * * That such acts will be done in the course of employment is necessarily contemplated, and they are inevitable incidents. Such dangers as attend them, therefore, are incidental dangers. At the same time injuries occasioned by them are accidents resulting from the employment. Are we to place the use of tobacco in this list of ministrations to the comfort of the employed? Is its use necessarily contemplated in the course of such an employment as that in which Duarte was engaged? The petitioner, in answering these questions in the negative, places great dependence in the argument that tobacco is used to appease a self-created appetite and not a natural appetite. The argument does not appeal to us. In an endeavor to determine what indulgences of human beings are responsive to the demands of natural, what to unnatural, appetites, we should be carried to the depths of biological and physiological research. Such labor is not necessary. We have the tobacco habit with us, and must deal with it as it is. It will not do to say that mankind would be better for a lack of the weed, even if that statement be true. Tobacco is universally recognized to be a solace to him who uses it, and it may be that such a one, unless he finally shakes off the habit, cannot perform the labors of his life as well without it as with it."

502

In addition to the legal principles above enunciated we think that the court's observations as to the use of tobacco are equally applicable to coffee.

The Workmen's Compensation Act was intended to serve a beneficent purpose, and should be liberally construed so as to effectuate its purpose and humane design. Boris Const. Co. v. Haywood, supra. Further, it has been uniformly the view in this jurisdiction that if there is any reasonable view of the evidence that will support the conclusion reached by the trial court, the finding and judgment will not be disturbed. Ex parte Sloss-Sheffield Steel & Iron Co., 207 Ala. 219, 92 So. 458; Houser v. Young, 247 Ala. 562, 25 So.2d 421; Malbis Bakery Co., Inc., v. Collins, 245 Ala. 84, 15 So.2d 705; Southern Cotton Oil Co. v. Bruce, supra.

We therefore conclude that under the facts of this case above set out, and the legal principles applicable thereto, no error should be attached by this court to the conclusion reached by the trial court that plaintiff's injuries did arise out of his employment.

It follows therefore that this cause is due to be affirmed and it is so ordered.

Affirmed.