990 So.2d 369 (2007)
UNIVERSITY OF SOUTH ALABAMA
v.
P.J. LUMBER COMPANY.
2050834.
Court of Civil Appeals of Alabama.
January 12, 2007.
Rehearing Denied March 16, 2007.
Certiorari Quashed February 22, 2008. Alabama Supreme Court 1060963.
*370 Thomas R. Boller, Mobile, for appellant.
William E. Pipkin, Jr., of Austill, Lewis, Pipkin & Moore, P.C., Mobile, for appellee.
THOMPSON, Judge.
In December 2003, P.J. Lumber Company filed a complaint seeking a judgment declaring whether it owed workers' compensation benefits to Grady Albert, Jr., one of its employees. On July 12, 2004, P.J. Lumber filed a suggestion of death, informing the court that Albert had died on January 25, 2004. On March 29, 2005, P.J. Lumber filed a motion to dismiss its declaratory-judgment action. In that motion, P.J. Lumber alleged that no party had been substituted in Albert's place within the six-month time limit prescribed by Rule 25(a)(1), Ala. R. Civ. P. The trial court initially denied P.J. Lumber's motion to dismiss the action, and Albert's estate was substituted as a party. However, P.J. Lumber filed a motion to reconsider that ruling, and on October 31, 2005, the trial court entered an order granting P.J. Lumber's motion and dismissing the action. Albert's estate did not appeal the October 31, 2005, dismissal of the action.
However, on November 23, 2005, the University of South Alabama ("USA") filed a motion to intervene in the action, a complaint in intervention, and a postjudgment motion seeking reconsideration of the dismissal of the action. In those filings, USA alleged that it had provided medical treatment to Albert as a result of what USA referred to as a "work-related injury." USA sought to recover $771,306.79, the value of the medical services it had provided to Albert, from P.J. Lumber. On February 22, 2006, the trial court entered an order granting USA's motion to intervene.
P.J. Lumber moved to dismiss USA's claims in the trial court. USA responded, and, ultimately, both P.J. Lumber and USA moved for a summary judgment. On May 31, 2006, the trial court entered a judgment determining that it should not have allowed USA to intervene because, it determined, USA had no right to intervene in the action or to file a claim against P.J. Lumber under the Workers' Compensation Act ("the Act"), § 25-5-1 et seq., Ala.Code 1975; accordingly, the trial court granted P.J. Lumber's summary-judgment motion. USA timely appealed.
"We review the trial court's grant or denial of a summary-judgment motion de novo, and we use the same standard used by the trial court to determine whether the evidence presented to the trial court presents a genuine issue of material fact. Bockman v. WCH, L.L.C., 943 So.2d 789 (Ala.2006). Once the summary-judgment movant shows there is no genuine issue of material fact, the nonmovant must then present substantial evidence creating a genuine issue of material fact. Id. `We view the evidence in the light most favorable to the nonmovant.' 943 So.2d 789 We review questions of law de novo. Davis v. Hanson Aggregates Southeast, Inc., 952 So.2d 330 (Ala.2006)."
*371 Smith v. State Farm Mut. Auto. Ins. Co., 952 So.2d 342 (Ala.2006).
USA argues that the trial court erred in concluding that USA could not maintain an action against P.J. Lumber under the provisions of the Act to recover amounts for the cost of the medical services it had provided to Albert. In its judgment, the trial court relied, in part, on § 25-5-81, Ala.Code 1975. That section provides, in pertinent part:
"(a) Commencement of action in circuit court.
"(1) Procedure. In case of a dispute between employer and employee or between the dependents of a deceased employee and the employer with respect to the right to compensation under this article and Article 2 of this chapter, or the amount thereof, either party may submit the controversy to the circuit court of the county which would have jurisdiction of a civil action in tort between the parties...."
§ 25-5-81, Ala.Code 1975 (emphasis added).
USA contends that § 25-5-81, which provides a cause of action only for a dispute between the employer and the employee, does not apply in this case because that section governs claims for "compensation." Under the Act, the term "compensation" is defined as "[t]he money benefits paid on account of injury or death"; the Act specifies that the term "does not include medical and surgical treatment...." § 25-5-1(1), Ala.Code 1975. USA maintains that it did not seek a determination of what, if any, compensation Albert might be due under the Act. Rather, it contends that it is seeking a declaration of P.J. Lumber's liability under § 25-5-77, Ala. Code 1975, which governs payment of expenses for medical and surgical treatment.
USA contends that a subsection of § 25-5-77 provides for the independent action of a medical provider against an employer in the absence of an injured employee's action, especially in this case, where P.J. Lumber, the employer, sought a determination of its liability under the Act. Section 25-5-77 provides, in pertinent part:
"(a) In addition to the compensation provided in this article and Article 4 of this chapter, the employer, where applicable, shall pay the actual cost of the repair, refitting, or replacement of artificial members damaged as the result of an accident arising out of and in the course of employment, and the employer... shall pay an amount not to exceed the prevailing rate or maximum schedule of fees as established herein of reasonably necessary medical and surgical treatment....
". . . .
"(i) Any party, including a health care provider, is entitled to a review by an ombudsman of medical services that are provided or for which authorization of payment is sought if any party or the health care provider has any of the following:
"(1) Been denied payment or had the charge reduced for medical services rendered.
"(2) Been denied authorization for the payment of services requested or performed when authorization is required.
". . . .
"(4) A party to a medical dispute that remains unresolved after a review of medical services as provided by this section may petition the court for relief."
(Emphasis added.)
USA contends that legislative intent to create an independent cause of action for medical providers is evidenced from the fact that § 25-5-77 establishes a *372 distinction between compensation and payment for medical services. It is clear that an injured employee may recover payment for medical expenses pursuant to § 25-5-77 even in the absence of having filed a claim for compensation under the Act. Ex parte Tuscaloosa, 522 So.2d 782 (Ala.1988). In that case, our supreme court stated:
"Therefore, the filing of a[n action] to enforce payment of compensation benefits is not required in order to vest jurisdiction in the circuit court to adjudicate a claim for accrued medical expenses. To recover medical expenses, whether incurred within the [two-year] period of limitations or at any time thereafter, the injured employee, of course, must meet the statutorily imposed burden of proof with respect to `notice,' `accident,' cause relation of the injury and resultant medical expenses, etc...."
Ex parte Tuscaloosa County, 522 So.2d at 784 (emphasis added). In order for USA's arguments to be successful, USA would have to be able to meet the statutory burden of proof to establish that Albert was entitled to recover under the Act. In other words, USA would have to demonstrate that Albert was injured in the line and scope of his employment. See § 25-5-1(9) (the definition of injury provides that an injury must "aris[e] out of and in the course of the employment"). However, there is nothing in the Act to indicate that the legislature intended that a medical provider be allowed to stand in the shoes of the injured employee to prosecute a claim under the Act. There is no language in § 25-5-77 indicating that a medical provider has any right to maintain an independent action under the Act in the absence of an action filed by the injured employee, and USA has failed to cite to this court any other authority to support this portion of its argument on appeal.
USA also contends that because under subsection (i) of § 25-5-77, a medical provider is allowed review of medical services by an ombudsman, a medical provider must also have the right to assert a cause of action under the Act. USA also maintains that in enacting the Act, the Alabama Legislature intended that it be afforded a cause of action under these facts because a medical provider intended that the Act be "liberally construed to effect the intended beneficent purposes." Act No. 92-537, § 1, Ala. Acts 1992.
In setting forth its legislative intent in enacting the modifications to the Act, our legislature stated:
"It is the intent of the Legislature that the Department of Industrial Relations and the Alabama judicial system shall administer the Alabama Workers' Compensation Act to provide a workers' benefit system to insure the quick and efficient payment of compensation and medical benefits to injured and disabled workers at a reasonable cost to the employers who are subject to the Alabama Workers' Compensation Act. It is the specific intent of the Legislature that workers' compensation benefit claim cases be decided on their merits. The Alabama Workers' Compensation Act is remedial in nature and should be liberally construed to effectuate the intended beneficial purposes. However, even a liberality of construction does not abrogate the measure of proof or sufficiency of evidence."
Act No. 92-537, § 1 (emphasis added).
Although "`[c]ourts must liberally construe the workers' compensation law "to effectuate its beneficent purposes," ... such a construction must be one that the language of the statute "fairly and reasonably" supports.'" Ex parte Weaver, 871 So.2d 820, 824 (Ala.2003) (quoting Ex parte Dunlop Tire Corp., 706 So.2d 729, 733 *373 (Ala.1997), quoting in turn Ex parte Beaver Valley Corp., 477 So.2d 408, 411 (Ala. 1985)). "An action brought under the Alabama Work[ers'] Compensation laws is purely statutory." Slagle v. Reynolds Metals Co., 344 So.2d 1216, 1217 (Ala. 1977). Also, in determining whether a medical provider may maintain an independent cause of action under the Act, the provisions of the Act must be interpreted in pari materia. Tucker v. Molden, 761 So.2d 996, 998 (Ala.2000).
This court has reviewed the sections of the Act cited by USA, as well as other provisions of the Act. Our review has revealed no mention in the Act of a medical provider's right to assert an action under the Act. Neither the Act nor its statement of legislative intent reveal any provision indicating that the Alabama Legislature, in enacting the Act, intended to create an independent cause of action for a medical provider. USA has failed to direct this court to any provision of the Act that might be interpreted to grant it the right to maintain an independent action under the Act.
As stated by the trial court, "a fair reading of the Alabama Workers' Compensation Act, as amended from time to time, does not allow an independent action such as this."
USA also contends that it properly sought to intervene in the action pursuant to Rule 24(a), Ala. R. Civ. P. That rule allows intervention
"(1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."
This court has determined that the Act did not confer on USA an "unconditional right to intervene." However, USA argues that even if the Act does not afford it the right to maintain an independent action, it should have been allowed to intervene under Rule 24(a)(2). USA contends that it has an interest in the litigation, that its interests are no longer adequately protected by other parties, and that the dismissal of the action impedes its ability to protect its interests. In making that argument, USA relies only on Davidson v. Pet, Inc., 644 So.2d 896 (Ala.1994), and Moore Electric Co. v. Worthington, 586 So.2d 5 (Ala.Civ.App.1991). However, in both of those cases, the intervenors were proceeding in the respective actions pursuant to specific sections of the Act. Therefore, those cases are distinguishable.
In Moore Electric Co. v. Worthington, supra, the intervenor had paid certain medical expenses for the injured worker before it became apparent that the worker's injury was work-related. Section 25-5-77(a) provides that when another provider is liable for an injury, an employer is not required to pay benefits for the injury, or is liable only for a deficiency in the amount of benefits to be paid. This court held that given the evidence, the trial court did not err in concluding that "in light of the fact that the injury was work-related[,] the employee was not entitled to receive the benefits from [the intervenor] or any other source besides the employer." Moore Elec. Co. v. Worthington, 586 So.2d at 7. Therefore, this court concluded that the intervenor was entitled to assert a subrogation claim pursuant to the Act.
In Davidson v. Pet, Inc., supra, the employer intervened in an injured worker's third-party action, seeking reimbursement for workers' compensation benefits it had *374 paid the injured worker. The trial court determined that the employer was entitled to reimbursement, and our supreme court affirmed. In so holding, our supreme court relied on § 25-5-11(a), Ala.Code 1975, a portion of the Act. That section provides, in relevant part, that "[i]f the injured employee ... recovers damages against [a third-party tortfeasor], the amount of the damages recovered and collected shall be credited upon the liability of the employer for compensation."
Thus, in both of the cases relied upon by USA in asserting this argument, the intervenors had viable claims provided for by the Act. In this case, USA has not demonstrated to this court that the Act provides it a method for the relief it seeks with regard to P.J. Lumber. Given the arguments currently presented to this court, we cannot say that USA has demonstrated that the trial court erred in entering its summary judgment in this matter.
We note that the parties have not addressed before this court the issue of the timeliness of USA's motion to intervene. Given this court's holding, we pretermit discussion of that issue.
AFFIRMED.
PITTMAN, J., concurs.
CRAWLEY, P.J., concurs in part and concurs in the result in part, with writing, which BRYAN, J., joins.
MURDOCK, J., concurs in the result, without writing.
CRAWLEY, Presiding Judge, concurring in part and concurring in the result.
I concur in the majority opinion's conclusion that the Workers' Compensation Act does not provide the University of South Alabama ("USA") the right to maintain an independent action against P.J. Lumber Company, the employer in this case. I believe, however, that USA might have had a right to intervene in the action even if it did not have the right to maintain a separate action against P.J. Lumber. Nevertheless, I reluctantly agree that USA fails to advance a properly supported argument on this point and therefore that this court need not consider the argument further than it already has as a ground for the reversal of the trial court's judgment. I, however, would like to briefly discuss why I believe that USA might have had the right to intervene in this action.
Although allowing a party to intervene after a judgment has been entered is not necessarily favored, considering the fact that USA would not have been a party who would have had notice of the action and whose rights would have been adequately represented by the employee, who would have been arguing that his injury was a work-related injury, I believe that USA's attempt to seek postjudgment intervention was likely timely. See Randolph County v. Thompson, 502 So.2d 357, 365 (Ala. 1987), overruled on other grounds by State ex rel. Sokira v. Burr, 580 So.2d 1340 (Ala.1991); and Strousse v. Strousse, 56 Ala.App. 436, 322 So.2d 726 (Ala.Civ.App. 1975). Other questions regarding the propriety of intervention by USA exist, of course, including whether USA has a sufficient legally protectable interest in the property or transaction at stake in the declaratory-judgment action and whether the disposition of the action would impair or impede USA's ability to protect such an interest. USA does not cite any authority or make an argument concerning those issues. USA does attempt to draw a parallel between those cases allowing intervention of workers' compensation carriers into third-party tort actions brought by employees, see Orum v. Employers Casualty Co., 348 So.2d 792 (Ala.Civ.App.1977), *375 but the attempt is weak and the argument underdeveloped. There exists federal authority for the proposition that USA was not required to have its own cause of action in order to have a right to intervene, see Jones v. Prince George's County, 348 F.3d 1014, 1018 (D.C.Cir.2003); however, USA does not make or support that argument either. In conclusion, had a better argument been made, I would have been inclined to have found a basis for intervention in the present case.
BRYAN, J., concurs.